# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

FANNIE MAE,               §
                             §
       *Plaintiff,*      §
                             §
v.                         §       CIVIL ACTION H-08-3588
                             §
U.S. PROPERTY SOLUTIONS, L.L.C., *et al.,*  §
                             §
       *Defendants.*     §

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Fannie Mae's motion to dismiss defendants U.S. Property Solutions, L.L.C., Caridi Industries, L.L.C., Marcello Caridi, and Marco Caridi's counterclaims pursuant to Rule 12(b)(6) or, alternatively, 9(b) of the Federal Rules of Civil Procedure. Dkt. 16. On consideration of the parties' pleadings, the record, and the applicable law, Fannie Mae's motion to dismiss pursuant to Rules 12(b)(6) and 9(b) is GRANTED.

## I. BACKGROUND

This case arises from a Multifamily Note (the "Note") executed by defendants U.S. Property Solutions, L.L.C. and Caridi Industries, L.L.C. for $1,120,000.00, payable to Arbor Commercial Funding, L.L.C. Dkt 2. Shortly after the Note was executed, Arbor Commercial Funding, L.L.C. assigned the Note to Fannie Mae. *Id.* The Note is also personally guaranteed by defendants Marcello and Marco Caridi. *Id.* Accordingly, U.S. Property Solutions, L.L.C., Caridi Industries, L.L.C., and Marcello and Marco Caridi (the "Property Owners") are all potentially liable for payment of the Note.

1

The Property Owners executed the Note in connection with the acquisition and operation of real property known as "Schumacher Square Apartments," located at 5701 Schumacher Lane in Houston, Texas (the "Property"). *Id.* The Property serves as the primary collateral for the Note. *Id.* As a result of Hurricane Ike, the Property was damaged, causing a 90% reduction in the rental income stream. Dkt. 12. Because of the sharp decline in income stream from the Property, the Property Owners failed to make the monthly payments due under the Note for the months of October, November, and December 2008. Dkt. 2. Thus, the Property owners admittedly were in monetary default. *Id.* And, the unrepaired hurricane damage constituted maintenance default, per the terms of the Note. *Id.*

Because the Note explicitly provided for the appointment of a receiver in the event of default by the Property Owners, the court granted Fannie Mae's emergency application for the appointment of a receiver to take control of the Property in December 2008. Dkt. 7. The receiver was to sell the Property and apply the sales proceeds to the debt owed by the Property Owners to Fannie Mae. In response, the Property Owners asserted counterclaims against Fannie Mae for its actions and the actions of the receiver, alleging breach of the Note documents, tortious interference with existing contracts, tortious interference with prospective business relations, fraud, and fraudulent inducement.[1] Dkt. 12. Fannie Mae now moves to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt 16. Alternatively, Fannie Mae moves to dismiss the

---

[1] Although the Property Owners do not specifically map the facts alleged to each claim, the court has performed the mapping independently, giving the Property Owners the benefit of the doubt, as it is required to do at this stage of the proceedings. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff.").

Property Owners' fraud and fraudulent inducement claims pursuant to Federal Rule 9(b) of the Federal Rules of Civil Procedure.  Dkt. 16.

## II. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). In considering a 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted).  And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.* at 1959.

3

**B. Rule 9(b) Standard**

In contrast, Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, states of mind, such as malice, intent, or knowledge, may be averred generally.  *Id.* (citing FED. R. CIV. P. 9(b)).

## III. ANALYSIS

**A. Breach of Contract**

"The essential elements of a breach of contract action under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Marketing & Supply Co. v. Kalama Intern.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (emphasis removed).  The Property Owners concede in their counterclaim that they were in both monetary and maintenance default under the terms of the Note.  Dkt. 12.  Moreover, other than alleging generally that Fannie Mae is in breach of the loan documents, the Property Owners do not assert which provision of the Note has been breached by Fannie Mae.  Therefore, the Property Owners have not provided sufficient factual allegations in support of the

4

second and third elements required to prove breach of contract: performance by the Property Owners and breach of contract by Fannie Mae.  Accordingly, Fannie Mae's Rule 12(b)(6) motion to dismiss the Property Owners' counterclaim for breach of the loan documents (Dkt. 16) is GRANTED.

## B.  Tortious Interference with Existing Contract

Under Texas law, to establish a claim for tortious interference with an existing contract, a claimant must show:  (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) the act proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).  The Property Owners wholly have failed to plead the existence of any valid contract entered into between the Property Owners and a third party.  The Property Owners contend that they have on two occasions been able to "*enter into* agreements which would effectively bring the [Note] current," but, because the receiver was appointed and Fannie Mae was unwilling to remove the receiver from the Property, they were unable to finalize those agreements. Dkt 12 (emphasis added).  The Property Owners do not allege that these agreements actually came into existence.  Rather, these "agreements," as plead by the Property Owners, at best amount to *prospective* contracts.  Accordingly, the Property Owners have not plead sufficient facts to support a claim of tortious interference with an existing contract.  The first required element, an existing contract subject to interference, is lacking.  Therefore, Fannie Mae's Rule 12(b)(6) motion to dismiss the Property Owners' counterclaim for tortious interference with an existing contract (Dkt. 16) is GRANTED.

**C.  Tortious Interference with Prospective Business Relations**

To prove tortious interference with prospective business relations under Texas law, the Property Owners must prove that: (1) there was a reasonable probability that the Property Owners and a third party would have entered into a business relationship; (2) Fannie Mae's conduct was independently tortious or unlawful and prevented the relationship from occurring; (3) Fannie Mae acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the Property Owners suffered actual harm or damages as a result of Fannie Mae's interference.  *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Wal-Mart Stores Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).

The Property Owners maintain that they attempted to establish business relationships with third parties, which would alleviate Fannie Mae's concerns and bring the Note current.  Dkt. 12. However, notably absent from the Property Owners' counterclaim is any assertion of an independently tortious or unlawful act by Fannie Mae that prevented those relationships from forming.  Rather, the Property Owners merely contend that the receiver has not repaired or listed the Property for sale, and that Fannie Mae refuses to remove the receiver from the Property, even if the default were cured.  *Id.*  But, despite their displeasure with the receiver's actions, the Property Owners do not allege that the receiver, ordered to protect Fannie Mae's security interest in the Property, acted tortiously or unlawfully.  Similarly, the Property Owners do not explain how Fannie Mae's alleged refusal to remove the receiver from the Property is independently tortious or unlawful. In fact, the order appointing the receiver requires court approval to terminate the receivership, meaning that Fannie Mae could not unilaterally remove the receiver, even if it so desired.  Dkt. 7.

6

Therefore, the Property Owners have not alleged sufficient facts to demonstrate the second required element in a claim of tortious interference with prospective business relations: an independently tortious or unlawful act by Fannie Mae. Accordingly, Fannie Mae's Rule 12(b)(6) motion to dismiss the Property Owners' counterclaim for tortious interference with prospective business relations (Dkt. 16) is GRANTED.

**D. Fraud**

In accordance with Texas law, to state a claim for common law fraud, a plaintiff must allege that the defendant made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (quoting *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex. 1996)). The Property Owners contend that Fannie Mae represented that it would consider entering into a forbearance agreement for the Note until the Property Owners received anticipated insurance proceeds. Dkt. 12. But, under the terms of the Note, Fannie Mae was not obligated to enter into a forbearance agreement. *See* Dkt. 1, Ex. 1. Nonetheless, Fannie Mae's statements could be fraudulent if Fannie Mae never, in fact, intended to consider entering into a forbearance agreement despite contrary representations to the Property Owners. Accordingly, Fannie Mae's Rule 12(b)(6) motion to dismiss the Property Owners fraud claim (Dkt. 16) is DENIED.

Nonetheless, as plead, the Property Owners have failed to state their fraud claim with the particularity required under Fifth Circuit precedent and Federal Rule of Civil Procedure 9(b). The Property Owners' counterclaim merely includes a general reference to the facts section of the

complaint and an allegation that Fannie Mae's conduct constituted fraud. Although the court interprets the Property Owners' claim for fraud as being based on Fannie Mae's statement concerning forbearance, the Property Owners have not made that clear by stating with particularity the circumstances constituting fraud. Further, the Property Owners' failed to explain *how* Fannie Mae's statement that it would consider placing the Note in forbearance was fraudulent. However, the Property Owners will be given an opportunity to remedy these pleading defects. Accordingly, Fannie Mae's motion to dismiss pursuant to Rule 9(b) is GRANTED. The Property Owners' claim of fraud is DISMISSED without prejudice, and the Property Owners are granted leave to amend their fraud claim.

**E. Fraudulent Inducement**

To state a claim under Texas law for fraudulent inducement, a plaintiff must allege all of the elements of fraud in addition to the fact that one party entered into a binding agreement as a result of the misrepresentation. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). The Property Owners have not indicated that they entered into a binding agreement as result of a misrepresentation made by Fannie Mae. In fact, the only binding agreement referenced in the Property Owners' counterclaim is the Note itself. Because the Note was entered into before any alleged fraud, the Property Owners' have not plead sufficient factual allegations to support the additional element required in a claim of fraudulent inducement: a binding agreement resulting from the misrepresentation. Accordingly, Fannie Mae's Rule 12(b)(6) motion to dismiss the Property

Owners' counterclaim for tortious interference with prospective business relations (Dkt. 16) is

GRANTED.[2]

## IV. CONCLUSION

Because the Property Owners have failed to allege facts necessary to establish a claim, the

Property Owners' breach of contract, tortious interference with an existing contract, tortious

interference with prospective business relations, and fraudulent inducement claims are DISMISSED,

pursuant to Rule 12(b)(6).  Additionally, because the Property Owners' have failed to plead their

fraud claim with sufficient particularity, as required by Rule 9(b), the Property Owners' fraud claim

is DISMISSED without prejudice, and the Property Owners are granted leave to amend the pleading

of their fraud within thirty (30) days of the date of this order.

It is so ORDERED.

Signed at Houston, Texas on April 28, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

---

[2]Because the Property Owners' fraudulent inducement claim is dismissed pursuant to Rule 12(b)(6), the court need
not address Fannie Mae's alternative Rule 9(b) motion to dismiss the same claim.