**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

FANNIE MAE, §
§
    *Plaintiff*, §
§
v. § CIVIL ACTION H-08-3588
§
U.S. PROPERTY SOLUTIONS, L.L.C., *et al.*, §
§
    *Defendants*. §

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Fannie Mae's motion to dismiss defendants U.S.

Property Solutions, L.L.C., Caridi Industries, L.L.C., Marcello Caridi, and Marco Caridi's

(collectively, "defendants") first amended counterclaim, pursuant to Rule 12(b)(6).  Alternatively,

Fannie Mae moves to dismiss defendants' common law fraud claim in accordance with Federal Rule

of Civil Procedure 9(b).  Dkt. 23.  After a careful review of the parties' pleadings, the record, and

the applicable law, Fannie Mae's motion to dismiss both the fraud and wrongful foreclosure claims

is DENIED.

## I. BACKGROUND

**A. Nature of the Case and Procedural History**

In summary, the case at bar arises from defendants' default on a note and loan documents

executed in connection with the acquisition and operation of real property known as the Schumacher

Square Apartments.

The Schumacher Square Apartments fell into disrepair after sustaining damage during Hurricane Ike. As a result, tenants evacuated, significantly reducing the income stream from the property. This chain of events caused defendants to lapse into both monetary and nonmonetary default under the terms of the note and loan documents. Dkt. 1.

Accordingly, Fannie Mae, the current holder of the note, filed suit and moved for the appointment of a receiver, pursuant to the express terms of the note and loan documents. After reviewing Fannie Mae's motion and defendants' response and conducting a hearing, in which all parties participated, on December 9, 2008, the court granted Fannie Mae's emergency motion to appoint a receiver. Dkt. 7. Fannie Mae later moved for an order of sale (Dkt. 13), which the court granted on February 24, 2009. Dkt. 18.

In the interim, defendants answered the complaint, asserting counterclaims for breach of contract, tortious interference with an existing contract, tortious interference with prospective business relations, fraud, and fraudulent inducement. Dkt. 12. Fannie Mae filed a motion to dismiss defendants' counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and, alternatively, 9(b). On April 28, 2009, the court issued a memorandum opinion and order dismissing defendants' counterclaims for breach of contract, tortious interference with an existing contract, tortious interference with prospective business relations, and fraudulent inducement, pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissing defendants' fraud counterclaim for failure to plead with the particularity required by Federal Rule of Civil Procedure 9(b). Dkt. 20. Defendants were granted leave to amend, and, on May 11, 2009, defendants filed an amended answer, clarifying the basis of the alleged fraud and adding a counterclaim for wrongful foreclosure. Dkt. 22.

**B. Nature of Defendants' Amended Counterclaims**

*1. Fraud*

The crux of defendants' fraud counterclaim, as amended, is that David Shipston, an agent of Fannie Mae, orally represented to defendants on or about October 20, 2008, that Fannie Mae would place the loan into forbearance until insurance proceeds were received to repair the damage caused by Hurricane Ike. Dkt. 22. But for this representation, defendants maintain that they would have entered into agreements to secure alternative funding for the repairs or negotiated the sale of the property to cure the default. *Id.* Defendants contend that Fannie Mae had no intention of placing the loan in forbearance, as indicated by its actions seeking appointment of a receiver without advance notice to defendants and despite defendants' requests to be apprised of the status of the anticipated forbearance agreement. Once appointed, the receiver allegedly made no efforts to consummate the sale of the property outside of foreclosure, despite the fact that defendants purportedly presented multiple interested buyers. *Id.*

*2. Wrongful Foreclosure*

In the newly added wrongful foreclosure counterclaim, defendants maintain that Fannie Mae negotiated the sale of the Schumacher Square Apartments to Blue Valley Apartments, Inc. ("Blue Valley") in advance of the foreclosure sale. Fannie Mae's actions allegedly "chilled" the bidding at the foreclosure sale, resulting in an inadequate price and, thus, a sizeable deficiency owed by defendants to Fannie Mae. *Id.* Therefore, defendants contend that the foreclosure sale was wrongful, and should be set aside and subject Fannie Mae to damages.

In response, Fannie Mae maintains that Blue Valley is not an independent third party but, rather, a contractor of Fannie Mae that is responsible for the management, operation, marketing, and

sale of properties on behalf of Fannie Mae.  Dkt. 23.  Fannie Mae maintains that Blue Valley does

not participate in the bidding process or assist in determining Fannie Mae's foreclosure sale bid.

Further, Fannie Mae explains that it is common practice for Fannie Mae to execute a deed conveying

the property to Blue Valley prior to foreclosure, to become effective as of the date of the foreclosure

sale should Fannie Mae prevail as the highest bidder.  *Id.*

## II. ANALYSIS

### A. Standards

*1. Rule 12(b)(6)*

As this court observed in its prior memorandum opinion and order, "Federal Rule of Civil

Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader

is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  In considering a 12(b)(6)

motion, courts generally must accept the factual allegations contained in the complaint as true.

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.

1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff

has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry and*

*Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted).  And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 1959.

*2. Rule 9(b)*

In contrast, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement on plaintiffs alleging fraud.   Under Rule 9(b), the claim must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  "[The Fifth Circuit] interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Id.* (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  Notwithstanding the higher standard, Rule 9(b) also relaxes the standard for pleading scienter or mental states; malice, intent, or knowledge may be averred generally. *Id.*

**B. Common Law Fraud**

Under Texas law, to state a claim for common law fraud, a claimant must allege that a material misrepresentation was made, was either known to be false or asserted without knowledge of the truth when made, was intended to be acted upon, was relied upon, and caused injury. *Dorsey*, 540 F.3d at 341 (quoting *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex. 1996)).  In its motion to dismiss under Rule 12(b)(6), Fannie Mae contents that, because it is not

obligated to enter into a forbearance agreement and the contract precludes modification by oral

agreement and reliance on unwritten agreements, defendants' reliance on Shipston's alleged

misrepresentation is not justifiable.  Alternatively, Fannie Mae argues that defendants have not pled

sufficiently the element of fraudulent intent in accordance with Rule 9(b).  Defendants wholly ignore

Fannie Mae's arguments under Rule 12(b)(6), focusing exclusively only its position that the fraud

has been pled at a level commensurate with the requirements of Rule 9(b).  The court focuses on

these arguments and corresponding responses in its analysis.

Common law fraud requires a showing that the claimant's reliance on the alleged

misrepresentation was justifiable.  *See Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003)

(citing *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  Although

"justifiable reliance" does not equate to reasonableness, a claimant "cannot recover if he blindly

relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his

opportunity to make a cursory examination or investigation." *Id.* at 546 (quoting *Field v. Mans*, 516

U.S. 59, 70–71 (1995)) (internal quotation omitted).  And, a claimant may not justifiably rely on a

representation if "there are 'red flags' indicating such reliance is unwarranted." *Id.* at 546–47

(quoting *In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001)) (internal quotation omitted).  Thus,

"reliance upon an oral representation that is *directly* contradicted by the express unambiguous terms

of a written agreement between the parties is not justified as a matter of law." *DRC Parts &*

*Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App—Houston [14th Dist.]

2002, pet. denied).  Generally, by "requiring  that all changes or amendments be in writing and

signed by both parties, [an agreement] provide[s] additional notice . . . not to rely on oral

representations." *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986-CV , 2008 WL

1991738, at *2–3 (Tex. App.—Houston [14th Dist. May 8, 2008], pet.  denied).

In the instant case, the deed of trust, executed in conjunction with the sale of the  property

expressly states that Fannie Mae may, but is not obligated to, enter into a forbearance agreement with

defendants.  Dkt. 1, Ex. 2.  The relevant paragraph states that the:

> Lender may (but shall not be obligated to) agree with Borrower, from time to time, and
> without giving notice to, or obtaining the consent of, or having any effect upon the
> obligations of, any guarantor or other third party obligor, to take any of the following actions:
> extend the time for payment of all or any part of the indebtedness; reduce the payments due
> under this Instrument, the Note, or any other Loan Document; release anyone liable for the
> payment of any amounts under this Instrument, the Note, or any other Loan Document;
> accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join
> in any extension or subordination agreement; release and Mortgaged Property; take or release
> other or additional security; modify the rate of interest or period of amortization of the Note
> or change the amount of the monthly installments payable under the Note; and otherwise
> modify this Instrument, the Note, or any other Loan Document.

*Id.*  Further, the deed of trust includes a merger clause and a clause precluding oral modifications to

the agreement:

> This instrument contains the entire agreement among the parties as to the rights granted and
> the obligations assumed in this Instrument.  This Instrument may not be amended or
> modified except by a writing signed by the party against whom enforcement is sought.

*Id.*  Moreover, the deed of trust contains a provision, in bold, all capital text, that expressly prohibits

reliance on oral agreements and negates unwritten oral agreements:

> THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS
> REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT
> BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR
> *SUBSEQUENT* ORAL AGREEMENTS.  THERE ARE NO UNWRITTEN ORAL
> AGREEMENTS BETWEEN THE PARTIES.

*Id.* (emphasis added).

"[A] party's disclaimer of reliance on representations, if the intent is clear and specific, can defeat claims for fraud, fraudulent inducement, and negligent misrepresentation, because reliance is a necessary element of each of those claims." *Garza v. CTX Mortgage Co., L.L.C.*, — S.W.3d —, 2009 WL 1533007, at *5 (Tex. App.—Dallas, June 3, 2009, no pet. h.).  Although Texas courts have long recognized that disclaimers of reliance and merger clauses may, but do not *per se*, preclude a party from claiming fraud, *see Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179, 181 (Tex. 1997), the Texas Supreme Court recently clarified the rule by outlining several relevant considerations for determining whether reliance is disclaimed.

> In determining whether a party has demonstrated a clear and unequivocal expression of intent to disclaim reliance, Texas courts consider the "totality of the circumstances," which includes, among others, the following factors:
>
> > (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute;
> > (2) the complaining party was represented by counsel;
> > (3) the parties dealt with each other in an arm's length transaction;
> > (4) the parties were knowledgeable in business matters; and
> > (5) the release language was clear.

*Berry v. Indianapolis Life Ins. Co.*, No. 08-CV-0248-B, 2009 WL 804163, at *14–15 (N.D. Tex. Mar. 26, 2009) (slip copy) (citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008)); *see also Solutions & Specialized Innovations, Ltd. v. Six Flags, Inc.*, No. H-07-2355, 2008 WL 5435561, at *1 (S.D. Tex. Dec. 31, 2008) (slip copy) (Werlein, J.) (recognizing the Texas Supreme Court's recent opinion and declining to rule on the issue based on the limited record before the court).[1]

---

[1] The court notes that the *BioSilk* court, cited previously, did not apply these factors in its order issued May 8, 2008; however, it nonetheless concludes that they are applicable per the Texas Supreme Court's decision in *Forest Oil*, which was decided shortly thereafter, on August 29, 2008.

Here, it is not clear that the alleged misrepresentation—that Fannie Mae would enter into a forbearance agreement—directly conflicts with the terms of the note and loan documents, which permit Fannie Mae to enter into such agreements.  Further, the court cannot determine whether defendants demonstrated a "clear and unequivocal expression of intent to disclaim reliance" based solely on the facts alleged in the complaint and documents attached and referenced therein, as required in a Rule 12(b)(6) analysis.  The limited record before the court is simply devoid of factual assertions relevant to the court's consideration of the factors articulated by the Texas Supreme Court. It follows, then, that the court cannot conclude, as a matter of law, that defendants' reliance was not justified.  Therefore, Fannie Mae's motion to dismiss the fraud counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), is DENIED.

The court now addresses Fannie Mae's alternative argument that defendants failed to plead fraudulent intent sufficiently, per the requirements of Rule 9(b). "The particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman v. DCS Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  "Although scienter may be 'averred generally,' case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent.  To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Id.* (citing and quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir.1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading." (emphasis in original)); *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.) ("Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the

9

complaint must still afford a basis for believing that plaintiffs could prove scienter."), *cert. denied,*

498 U.S. 941, 111 S. Ct. 347 (1990); *cf. Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d

Cir.1990) (requiring plaintiffs who allege fraud "to plead the factual basis which gives rise to a '

*strong inference* ' of fraudulent intent." (citation omitted) (emphasis added))).  The court is not

required to credit defendants' conclusory statements, and the relaxed standard for pleading intent in

Rule 9(b) does not "act as a license to evade the less rigid—though still operative—strictures of Rule

8."  *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1954 (2009) (citing and quoting 5A CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1301 (3d ed. 2004)

("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because,

absent overriding considerations pressing for a specificity requirement, as in the case of averments

of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule

8(a) . . . should control the second sentence of Rule 9(b).")).

Admittedly, the ruling in the case *sub judice* is achieved by the narrowest of margins, but,

without speaking to the merits of defendants' counterclaim, the court finds that defendants have

complied with the Rule 9(b) standard for pleading fraudulent intent.  Considering defendants' factual

allegations in totality and taking them as truthful, it is reasonable to infer that at the time Shipston,

as Fannie Mae's agent, represented to defendants that Fannie Mae would enter into the forbearance

agreement, he either knew that Fannie Mae would not enter into the agreement or made the

representation without regard to its truth.  As explained previously, the express language of the note

and loan documents indicates that Fannie Mae was under no obligation to enter into a forbearance

agreement; therefore, the representation may have been made without knowledge as to whether

Fannie Mae actually would agree to place the note in forbearance.  And, although mere failure to

perform a promise is not *per se* indicative of fraudulent intent, when coupled with additional probative facts, the inference of intent not to do the promised act may arise. *See* RESTATEMENT (SECOND) OF TORTS § 530(1) cmt. d ("The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into. The intention may be shown by any other evidence that sufficiently indicates its existence . . . ."); *cf. United States v. Shah,* 44 F.3d 285, 293 (5th Cir.1995) (addressing fraudulent intent in the context of the False Claims Act). Here, defendants contend that the misrepresentation was made just prior to Fannie Mae's filing of the instant complaint and motion to appoint a receiver, actions wholly inconsistent with consideration of a forbearance agreement. The inference is also strengthened by defendants' assertion that no advance notice of Fannie Mae's intention to file the instant complaint or the emergency motion to appoint a receiver was given, despite defendants' alleged desire to be apprised of the status of the anticipated forbearance agreement. Such notice may have spurred defendants to take alternate actions, in lieu of pursuing the forbearance agreement, to cure the monetary and nonmonetary default without resort to foreclosure. Defendants also claim that the receiver made little or no effort to maintain or manage the property, or sell it outside of foreclosure, despite defendants' purported presentation of several interested buyers. Considered in their entirety, the facts alleged give rise to the inference of fraudulent intent; therefore, the court DENIES Fannie Mae's motion to dismiss defendants' fraud counterclaim, pursuant to Federal Rule of Civil Procedure 9(b).

**B. Wrongful Foreclosure**

In order to recover damages for wrongful foreclosure, a claimant must show that an irregularity in the foreclosure sale occurred, *e.g.* failure to comply with a statutory or contractual term, which caused damages to the claimant. *Univ. Savings Ass'n. v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982); *see also Am. Savings & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581 (Tex. 1975); *Charter Nat'l Bank—Houston v. Stevens*, 781 S.W.2d 368, 371–75 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The existence of irregularities in the sale, alone, is insufficient for recovery, as is mere inadequacy of consideration; there must be a causal link.

However, if the mortgagee affirmatively acted in a way that "chilled" bidding at the foreclosure sale, in contrast to an inadvertent technical irregularity, and the mortgagor seeks damages, rather than a set aside of the sale, the mortgagor need not prove a "grossly inadequate selling price." *Charter Nat'l Bank—Houston*, 781 S.W.2d at 371. The basis for recovery in this instance is akin to a recovery for conversion of personal property because the mortgagor has "a right to an orderly disposition of the property . . . and if a defect deters third party bidding, then an action for damages should lie." *Id.* at 375 (citing G.S. NELSON, REAL ESTATE FINANCE LAW 558 (2d ed. 1985)). Thus, "[g]iven proof of proximate cause, . . . damages should be recoverable." *Id.*

Both Fannie Mae and defendants highlight in their respective filings that, in order to analyze whether an irregularity existed and whether Fannie Mae affirmatively acted in a way that chilled third party bidding at the foreclosure sale, information outside the pleadings must be considered. Dkts. 23–24 (observing that the attached affidavit is not contained within the pleadings and that information about Blue Valley is necessary to the court's judgment). In order to consider facts and materials outside of the pleadings, the motion to dismiss must be converted to a motion for summary

12

judgment, as permitted by Federal Rule of Civil Procedure 12(d), which requires that reasonable

notice be given to the parties. *See Kennedy v. Chase Manhattan Bank U.S.* , 369 F.3d 833, 839 (5th

Cir. 2004); *St. Paul Mercury Ins. Co. v. Williamson* , 224 F.3d 425, 435 (5th Cir. 2000); *Washington

v. Allstate Ins. Co.*, 901 F.2d 1281, 1283 84 (5th Cir. 1990). The district court has "complete

discretion to accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise,

L.L.C.*, 255 Fed. Appx. 775, 783 (5th Cir. 2007) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d

186, 193 (5th Cir. 1988)). However, "[w]hen documents outside the pleadings have been submitted

in connection with a motion to dismiss and discovery would be appropriate to resolve the issues

raised in that motion, it is appropriate to allow discovery before converting the motion into one for

summary judgment." *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 189 (S.D. Tex. 2008)

(Rosenthal, J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.

2003), *modified on denial of rehearing on other grounds*, 355 F.3d 356 (5th Cir. 2003) and *Simmang

v. Tex. Bd. of Law Examiners*, 346 F. Supp. 2d 874, 890 (W.D. Tex. 2004) ("[I]f little or no

discovery has been conducted on the issue for which the extraneous material was submitted [in

connection with a motion to dismiss under Rule 12(b)(6)], the Court may decline to consider the

attached materials and decline to convert the motion into a summary judgment motion.")). The court

declines to exercise its discretion to consider evidence outside the pleadings, preferring to permit the

parties the opportunity for discovery on the issue. Therefore, Fannie Mae's motion to dismiss the

wrongful foreclosure claim, pursuant to Rule 12(b)(6) is DENIED.

## IV. CONCLUSION

Having concluded that resolution of defendants' counterclaims of fraud and wrongful disclosure requires the development of a more complete record, the court DENIES Fannie Mae's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, the court finds that defendants have met the heightened pleading standards of Federal Rule of Civil Procedure 9(b) with respect to the fraud counterclaim. Therefore, Fannie Mae's alternative motion to dismiss in accordance with Rule 9(b) is also DENIED.

It is so ORDERED.

Signed at Houston, Texas, on July 6, 2009.

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

14