UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FANNIE MAE, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-3588 |
| | § | |
| U.S. PROPERTY SOLUTIONS, L.L.C., *et al.*, | § | |
| | § | |
|    *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Fannie Mae's motion for summary judgment (Dkt. 41) and defendants Marco R. Caridi and Marcello P. Caridi's motion for a continuance, which is contained within their response to Fannie Mae's motion (Dkt. 44). After considering the motion, response, reply, and applicable law, the court is of the opinion the Ciridis' motion for continuance should be DENIED and that Fannie Mae's motion for summary judgment should be GRANTED.

**I. BACKGROUND**

US Property Solutions, LLC and Caridi Industries LLC purchased Schumacher Square Apartments on or about November 20, 2006, by executing a note payable to Arbor Commercial Funding, LLC for $1,120,000.00 (the "Note"). Dkt. 21, Exh. 1. Defendants Marco R. Caridi and Marcello P. Caridi guaranteed the Note. Dkt. 21, Exhs. 4, 5. As of the date this lawsuit was filed, Fannie Mae was the holder and owner of the Note and related documents, and Arbor Commercial Mortgage ("Arbor") serviced the loan. Dkt. 1.

Schumacher Square Apartments sustained significant damage when Hurricane Ike swept through the Houston area on September 13, 2008. The residents allegedly refused to pay rent due to "unliveable conditions," which resulted in a loss of income from the Schumacher Square

Apartments. Dkt. 22. The Caridis claim they contacted David Shipston at Arbor, the loan servicer, on or around September 16, 2008, explained that the income from the property was significantly diminished because the apartment complex was damaged by the hurricane, and advised that they needed to discuss payments with Fannie Mae. *Id.* The Caridis state that Shipston told them, on October 20, 2008, "that Fannie Mae would consider placing the loan into a forbearance agreement until insurance proceeds were paid." *Id.* ¶ 25. Then, on November 20, 2008, the Caridis sent Shipston a damage loss estimate. The Caridis claim that they "regularly requested to be kept posted with respect to the finalization of the forbearance agreement." *Id.*

On December 8, 2008, Fannie Mae filed its original complaint against the Caridis, and it simultaneously filed an application for the appointment of a receiver against US Property Solutions, LLC and Caridi Industries LLC. Dkts. 1, 2. In the application for an appointment of a receiver, Fannie Mae requested that the court appoint a receiver to "preserve, repair and sell the Property." Dkt. 2. The court, after considering the briefing of the parties as well as arguments made at a hearing conducted on December 9, 2008, granted the application for the appointment of a receiver. Dkt. 7.

On January 27, 2009, the Caridis filed an answer to Fannie Mae's complaint in which they asserted counterclaims against Fannie Mae for breach of the loan documents, tortious interference with existing contracts, tortious interference with prospective business relationships, common law fraud, and fraudulent inducement. Dkt. 12. Fannie Mae filed a motion to dismiss the Caridis' counterclaims. Dkt. 16. The court granted the motion as it pertained to the claims for breach of contract, tortious interference with an existing contract, tortious interference with prospective business relations, and fraudulent inducement. Dkt. 20. The court additionally found that the

Caridis failed to allege fraud with particularity and granted the Caridis leave to amend their counterclaim. *Id.*

On February 24, 2009, the court granted Fannie Mae's motion for an order of sale and issued an order authorizing the sale of the Schumacher Square Apartments. Dkt. 18. Fannie Mae conducted a foreclosure sale on March 3, 2009 and Fannie Mae, being the only bidder, acquired the Schumacher Square Apartments for $900,000.00. Dkt. 21. Fannie Mae filed its first amended complaint on April 30, 2009, asserting claims against the Caridis for a "substantial deficiency" remaining on the debt after the foreclosure sale, which included unpaid principal, accrued interest, default interest, late charges, legal fees, expenses, prepayment premium, and other amounts allegedly owed under the Note and other loan documents. *Id.* The Caridis filed an amended answer and counterclaim on May 11, 2009. Dkt. 22. In their amended counterclaim, the Caridis claim that Shipston falsely represented that Fannie Mae would enter into a forbearance agreement and that Fannie Mae falsely represented to the court that the apartment complex was abandoned when it was not. *See id.* The Caridis additionally seek damages for wrongful foreclosure and for failure to obtain an adequate sales price at the foreclosure sale. *Id.*

Fannie Mae moved to dismiss the amended counterclaim on June 1, 2009. Dkt. 23. On July 6, 2009, the court denied the second motion to dismiss, noting that the "resolution of defendants' counterclaims of fraud and wrongful disclosure requires the development of a more complete record." Dkt. 27. Fannie Mae now claims that "adequate time for discovery has passed" and requests summary judgment in its favor on its claim against the Caridis for the deficiency amounts owed under the guarantees of the Note as well as the Caridis' counterclaims against Fannie Mae. The Caridis argue that the amount of damages claimed by Fannie Mae is unfair. They also request

time to conduct additional discovery on their counterclaims for fraud and misrepresentation, claiming that they failed to conduct "any discovery" in this matter because they believed that Fannie Mae was going to enter into a settlement agreement with them.

## II. ANALYSIS

Fannie Mae presents the court with evidence, argument, and authorities in support of its position. In response, the Caridis do not cite one case, and they do not provide the court with any evidence. Rather, they seem to request that the court ground its decision on what the Caridis claim is "just" and "fair." The Caridis point out that Marco R. Caridi is a U.S. Military servicemember and that it is unfair that Fannie Mae, which the Caridis claim "is the federal government," would seek an "unreasonable" deficiency judgment against a servicemember currently serving the country. *Id.* The Caridis also refer to settlement discussions that occurred in a parallel state court matter against the Caridis' insurance company, in which Fannie Mae intervened. *See id.* The Caridis claim that they have not conducted discovery in this case because they thought that they had reached an settlement agreement with Fannie Mae that would encompass the claims in both matters. *See id.* The Caridis request that the court grant a continuance to allow them to conduct discovery. *See id.*

### A. *Motion for Continuance*

Under Federal Rule of Civil Procedure 56(d), a court considering a motion for summary judgment may grant a continuance if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Caridis request a continuance because "Defendants' Counsel did not conduct discovery based on the belief that the matter had settled and that the insurance settlement proceeds would satisfy the deficiency judgment in full." Dkt. 44. Fannie Mae claims that the Caridis did conduct discovery

in this matter, and it takes issue with the Caridis discussion of settlement discussions in the state court litigation, as such discussions are confidential and inadmissible. Dkt. 45; *see* Fed. R. Evid. 408; Tex. R. Evid. 408.

The Caridis should be aware that it is ill-advised to assume that a case is going to settle. The court agrees with Fannie Mae that it is improper to consider the substance of the settlement discussions. However, no matter how promising settlement looked, it was unreasonable for the Caridis to lie idle with regard to their responsibilities in this case. If the Caridis did not wish to continue conducting discovery in this case because they were in settlement discussions with Fannie Mae, they could have sought a stay of discovery pending the outcome of the discussions. They did not, however, give the court any indication that they were putting off affirmative discovery in hopes of a settlement. In fact, the Caridis filed an unopposed motion to continue the docket call that was set for January 29, 2010 because, among other reasons, discovery was incomplete, and the parties needed more time to conduct discovery. Dkt. 35. While this motion specifically mentioned a need to conduct more discovery, there is no indication that the Caridis were not conducting or would prefer to not conduct discovery pending settlement discussions.

The Caridis have had ample time to conduct discovery and, contrary to their assertions in response to the motion for summary judgment, *have* conducted discovery. In June 2009, the Caridis sent requests for production and interrogatories to Fannie Mae. Dkt. 45, Exh. 1. Fannie Mae sent responses to the interrogatories and requests for production to the Caridis on July 15, 2009. *See id.* The interrogatories included topics relating to the fairness of the foreclosure sale, and the requests for production include requests for Arbor's file relating to the Caridis or the Schumacher Square Apartments, all correspondence relating to the Schumacher Square Apartments, and all documents

relating to the foreclosure sale. *Id.* Fannie Mae claims to have produced almost 4,000 pages of documents in response to the Caridis' requests for production. Dkt. 45. Thus, the Caridis' assertion that "it is true that there has not been any discovery conducted" "relating to fraud and misrepresentation" is disingenuous.

Even if the Caridis' suggestion that they have not conducted discovery were taken as true, the Caridis have not met their burden to receive a continuance. "To preserve a complaint of inadequate opportunity to conduct discovery, the party opposing a motion for summary judgment must file a motion and non-evidentiary affidavits pursuant to Fed. R. Civ. P. 56(f), explaining why it cannot oppose the summary judgment motion on the merits." *Robbins v. Amoco Production Co.*, 952 F.2d 901, 907 (5th Cir. 1992). The Caridis have filed no evidentiary affidavits. And, even if they had, they were required to "present specific facts explaining the inability to make a substantive response" and had to "specifically demonstrate how discovery [would] enable [them] to establish the existence of a genuine issue of material fact." *Id.* (citations omitted). There is no discussion in the Caridis' response indicating what facts they hope to obtain through additional discovery that could potentially impact the outcome of Fannie Mae's motion for summary judgment. Rule 56(f) "cannot be relied upon to defeat a summary judgment motion where the result of a continuance to obtain further information would be wholly speculative." *Id.* (internal quotations and citation

omitted).[1] Here, the Caridis have not provided the court with any argument or evidence suggesting that a continuance would achieve anything other than a delay in the inevitable results.

### B. *Motion for Summary Judgment*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden

---

[1] Moreover, the Caridis did not follow the court's procedures with regard to their motion for a continuance. The procedures require "**all requests for extensions of deadlines and completion of discovery or for postponement of the trial**" to "**be signed by the attorney *and* the party making the request.**" Judge Gray H. Miller, Court Procedures § 4(A) (italics added, bold in original), *available at* http://www.txs.uscourts.gov/district/judges/ghm/procedures.pdf. The Caridis did not sign the request. The court procedures were presumably served in conjunction with the complaint, as required by the procedures. But, even if they were not, they were specifically referenced in the Order for Conference and Disclosure of Interested Parties, which was filed on December 8, 2008. Dkt. 3 ("Court Procedures and attachments, which are applicable to case assigned to Judge Gray H. Miller can be obtained on the District Website at www.tx.uscourts.gov.").

7

does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof

based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### *1. Deficiency Judgment*

A plaintiff seeking to enforce a guaranty must prove: "(1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied). Courts enforce guaranties according to their terms when those terms are clear and unambiguous. *Tex. Nat. Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994). Here, Fannie Mae presents evidence establishing the following: (1) the Caridis guaranteed the underlying Note; (2) Caridi Industries and US Property Solutions defaulted on the underlying Note by failing to make monthly payments beginning in October 2008 and by failing to maintain the property; (3) Fannie Mae demanded payment under the Note and accelerated the entire indebtedness in accordance with the terms of the Note when the borrowers failed to pay; (4) a foreclosure sale occurred on March 3, 2009 during which Fannie Mae purchased the property for $900,000.00, which exceeded both the gross and net as-is fair market value of the property; (5) the amount due on the date of foreclosure after adding the various interest and penalties provided for in the contract and the amounts paid for third-party reports and advances to the receiver was $1,388,610.57; (6) the amount due after deducting the $900,000.00 was $488,610.57; (7) additional interest has accrued since that time in accordance with the terms of the Note; and (8) the supplemental appraisal report cost $2,450.00. Dkt. 41, Exh. A. Thus, pursuant to this evidence, the total amount due from the Caridis as

guarantors of the Note as of October 15, 2010 was $678,226.27, not including attorneys' fees and expenses. *Id.* The Caridis indicate that the large amount due is unfair because when one deducts the amount secured from the foreclosure sale from the principal that was due at that time, only $190,000.00 remains.[2] Dkt. 44 ¶¶ 4-5.

The amount requested by Fannie Mae properly includes interest and penalties in accordance with the plain terms of the underlying Note. *See LaSalle Bank Nat. Ass'n v. Sleutel*, 289 F.3d 837, 843 (5th Cir. 2002) (applying Texas law) (holding that a guarantor must pay the prepayment consideration that was due under the terms of the note). The Caridis have not presented any evidence indicating that the contractual terms should not be enforced as written. While the amount due is high in comparison to the deficiency on the date of sale, if one were considering the principal only, it cannot be deemed unfairly high because the Caridis agreed to pay the significant penalties and interest associated with a default judgment, should US Property Solutions and Caridi Industries default, when they agreed to guarantee the Note, and neither they nor the borrowing companies has made a payment on the loan since September 2008.[3]

Because Fannie Mae has presented evidence indicating that the Caridis are guarantors of the Note and that $678,226.27 plus $317.23 in default interest per day since October 15, 2008 is due on that Note, and because the Caridis have presented no evidence showing that this amount is incorrect,

---

[2] The Caridis mistakenly state that the amount Fannie Mae is requesting is $900,000.00. Dkt. 44. ¶ 5.

[3] The Caridis imply in their response that there was unequal bargaining power when the loan agreements were signed because the Caridis are not "independently wealthy" and the investment "was just a means to increase income for their family." Dkt. 44. While they may not be independently wealthy, the court would have difficulty believing that Marco Caridi, a lawyer who owns a title company, and Marcello Caridi, a U.S. Navy Lieutenant, would not have ensured that they read and comprehended the terms of the agreements before guaranteeing a loan for $1,120,000.00. Fannie Mae attached portions of its loan underwriting file on the Caridis to its motion for summary judgment, and it reveals that both Caridis have extensive real estate experience. Dkt. 41, Exh. A-16.

10

Fannie Mae's motion for a deficiency judgment is GRANTED.

### *2. Fraud*

The Caridis claim, in their amended counterclaim, that Shipston fraudulently advised them that Fannie Mae would put their loan into forbearance because of the damage caused by Hurricane Ike, and they did not make payments on their loan because they relied on Shipston's representation. Then, rather than placing the loan in forbearance, Fannie Mae sought the appointment of a receiver from this court, without advance notice to the Caridis, who allegedly were trying to sell the property and had an interested buyer. *See* Dkt. 22. Fannie Mae claims that the Caridis' fraud claim fails because the Note contains a merger clause that bars post-contractual oral agreements and because the Caridis have failed to offer evidence to support their claim.

Common law fraud requires a showing that the claimant's reliance on the alleged misrepresentation was justifiable. *See Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003) (citing *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Although "justifiable reliance" does not equate to reasonableness, a claimant "cannot recover if he blindly relies upon a misrepresentation of falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 546 (quoting *Field v. Mans*, 516 U.S. 59, 70–71 (1995)). And, a claimant may not justifiably rely on a representation if "there are 'red flags' indicating such reliance is unwarranted." *Id.* at 546–47. Thus, "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App—Houston [14th Dist.] 2002, pet. denied). Generally, by "requiring that all changes or amendments be in writing and signed by both parties,

[an agreement] provide[s] additional notice . . . not to rely on oral representations." *BioSilk Spa, L.P. v. HG Shopping Centers, L.P.*, No. 14-06-00986-CV , 2008 WL 1991738, at *2–3 (Tex. App.—Houston [14th Dist. May 8, 2008], pet. denied).

Here, the Note expressly states that Fannie Mae may, but is not obligated to, enter into a forbearance agreement with defendants. Dkt. 1, Ex. 2. However, the Note also includes a merger clause and a clause precluding oral modifications to the agreement. *Id.* And, the Note contains a provision, in bold, all capital text, that expressly prohibits reliance on oral agreements and negates unwritten oral agreements. *Id.* Clearly, the Note put the borrowers on notice that they should not rely on any oral representations that Shipston allegedly made regarding Fannie Mae's willingness to enter into a forbearance agreement. The Caridis have offered no evidence to show that their alleged reliance on Shipston's misrepresentation was, in light of the clear contractual terms warning them not to rely on oral representations, justifiable.[4] The Caridis also have offered no evidence of damages. Accordingly, the Caridis' fraud claim fails as a matter of law. Accordingly, Fannie Mae's motion for summary judgment as to the Caridis' fraud claim is GRANTED.

---

[4] Moreover, as Fannie Mae points out, the Caridis, in response to an interrogatory requesting the Caridis to describe all communications that support their contention that Fannie Mae orally agreed to enter into a forbearance agreement, stated that Shipston represented on multiple occasions "leading up to September 1, 2008, payment becoming due by September 30, 2009 [sic.]" that it was "standing operating procedures [sic.] for Fannie Mae to offer a forbearance agreement in such a case when a hurricane hits" and that "no payment was expected over the next thirty days." Dkt. 41, Exh. D. The response appears to indicate that Shipston allegedly agreed that a payment did not need to be made in October. Fannie Mae did not file its complaint with this court until it failed to receive the October, November, and December payments. *See* Dkt. 41 at 17. Thus, even if it were justifiable to rely on Shipston's alleged oral representations, it was not justifiable to fail to make the November and December payments when Shipston allegedly told the Caridis that "no payment was expected for *thirty days*" in September.

### *3. Wrongful Foreclosure*

In their amended counterclaim, the Caridis claim that Fannie Mae "chilled" the bidding at the foreclosure sale by negotiating a sale of the Schumacher Square Apartments to Blue Valley Apartments, Inc. before the foreclosure sale, which discouraged bidding by a disinterested party and caused the property to be sold at an inadequate price. Dkt. 22. In order to recover damages for wrongful foreclosure, a claimant must show that an irregularity in the foreclosure sale occurred that caused damages to the claimant. *Univ. Savings Ass'n. v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982); *see also Am. Savings & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581 (Tex. 1975); *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371-75 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The existence of irregularities in the sale, alone, is insufficient for recovery, as is mere inadequacy of consideration. There must be a causal link. However, if the mortgagee affirmatively acted in a way that "chilled" bidding at the foreclosure sale, in contrast to an inadvertent technical irregularity, and the mortgagor seeks damages, rather than a set aside of the sale, the mortgagor need not prove a "grossly inadequate selling price." *Charter Nat'l Bank-Houston*, 781 S.W.2d at 371. The basis for recovery in this instance is akin to a recovery for conversion of personal property because the mortgagor has "a right to an orderly disposition of the property . . . and if a defect deters third party bidding, then an action for damages should lie." *Id.* at 375 (citing G.S. NELSON, REAL ESTATE FINANCE LAW 558 (2d ed. 1985)). Thus, "[g]iven proof of proximate cause, . . . damages should be recoverable." *Id.*

Fannie Mae provides the court with affidavits and evidence demonstrating that it did not chill the bidding process by negotiating a sale of the property before the foreclosure sale. Dkt. 41, Exh. B. Rather, as is its normal practice, it executed a deed to Blue Valley, which manages, operates,

markets, and sells multifamily properties that Fannie Mae acquires, before the foreclosure sale, "in anticipation of the possibility that Fannie Mae may be the highest bidder at the foreclosure sale." Dkt. 41, Exh. B. Blue Valley did not attend the sale or participate in the bidding process. *See id.* Fannie Mae was the only bidder on the Schumacher Square Apartments. Dkt. 41, Exh. A. The Caridis, who bear the burden of proof, do not provide any evidence that Fannie Mae's execution of the deed to Blue Valley is an "irregularity" or that it discouraged any other bidders. Thus, since there is no issue of material fact for trial, Fannie Mae's motion for summary judgment on the Caridis' wrongful foreclosure counterclaim is GRANTED.

### *4. Failure to Obtain an Adequate Price*

The Caridis' final counterclaim is for failure to obtain an adequate sales price at the foreclosure sale. Dkt. 22. Fannie Mae presented the court with specific facts indicating that the price it paid for the Schumacher Square Apartments was more than both the fair market value of the property and the adjusted "as-is market value" of the property as of the foreclosure date. Dkt. A & Dkt. A, Exh. 10. The Caridis did not present any summary judgment evidence suggesting otherwise. Thus, since the Caridis have not provided any specific facts showing a genuine issue for trial, Fannie Mae's motion for summary judgment as to their counterclaim for failure to obtain an adequate price is GRANTED.

### *5. Attorneys' Fees*

Paragraph 11 of the Note requires the borrower to pay attorneys fees incurred by Fannie Mae that result from a default under the Note. Dkt. 41, Exh. A-1. Paragraph 2 of the guaranty agreements requires the Caridis to pay all reasonable attorneys' fees and out-of-pocket expenses of attorneys incurred by Fannie Mae as a result of enforcing the guaranty agreements. Dkt. 41, Exhs.

A-5, A-6. Fannie Mae requests that the court grant it the right to present evidence of its attorneys' fees and expenses. The Caridis have not submitted any evidence indicating that Fannie Mae is not entitled to reasonable attorneys' fees and expenses. Therefore, the court GRANTS Fannie Mae's motion for reasonable attorneys' fees and expenses, and it ORDERS Fannie Mae to submit evidence of its fees and expenses and the reasonableness thereof within twenty days of this order. If the Caridis wish to oppose the reasonableness of the fees submitted, they are ORDERED to do so on or before the tenth day after Fannie Mae submits its evidence.

## IV. CONCLUSION

The Caridis' motion for a continuance (Dkt. 44) is DENIED. Fannie Mae's motion for summary judgment (Dkt. 41) is GRANTED. The court will issue a final judgment outlining the amount of damages and attorneys' fees and costs after it has received evidence of attorneys' fees and costs as outlined above.

It is so ORDERED.

Signed at Houston, Texas on January 10, 2011.

_____
Gray H. Miller
United States District Judge